## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | 2:13-cv-00801-MOB-MKM<br>2:16-cv-14057-MOB-MKM |
| DIRECT PURCHASER ACTIONS | |
| JERRY A. ANDERSON, SR., LAURA L. LARUE, and CHRISTOPHER A. LEE, on behalf of themselves and all other similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BRIDGESTONE CORPORATION, BRIDGESTONE APM COMPANY, YAMASHITA RUBBER CO., LTD., YUSA CORPORATION, SUMITOMO RIKO COMPANY, LTD., DTR INDUSTRIES, INC., TOYO TIRE & RUBBER CO., LTD., TOYO TIRE NORTH AMERICA OE SALES LLC, AND TOYO AUTOMOTIVE PARTS (USA), INC.,<br><br>        Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(1) AND 12(B)(6) AND DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(F) AND 23(D)(1)(D)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF THE ISSUES ............................................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................................ vi

I.      INTRODUCTION ...................................................................1

II.     FACTUAL BACKGROUND ...........................................................2

III.    ARGUMENT ......................................................................4

      A.    This Case is an Ordinary Direct Purchaser Class Action Under Section 1 of the Sherman Act; the Court has Subject Matter Jurisdiction .........................4

            1.    Defendants' Rule 12(b)(1) Motion is Nothing More Than a Repackaged Facial Challenge to Purchaser Status that this Court has Already Rejected in Other Cases. .......................................6

            2.    Defendants' Facial Attack Otherwise Lacks Merit..................................7

            3.    Defendants' Factual Attack on the Court's Subject Matter Jurisdiction is Meritless and Improper. ...................................9

      B.    Plaintiffs are "Direct Purchasers," as Defined by Illinois Brick and Its Progeny.. ......................................................................11

      C.    Defendants' Request for Summary Judgment is Both Procedurally and Substantively Deficient. ................................................................14

      D.    Defendants' Motion to Strike Plaintiffs' Class Allegations is Improper Procedurally and Contrary to Rule 23 Standards. .............................18

IV.    CONCLUSION....................................................................20

11812882.1

## TABLE OF AUTHORITIES

CASES

*Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490 (S.D. Ohio 2012) ................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 24 (1986) .................................14

*Anderson v. United States*, 39 F. App'x 132 (6th Cir. 2002) ....................................18

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) ................................ 14-15

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ..................................6

*Bell v. Hood*, 327 U.S. 678 (1945) ..............................................................6

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) .................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................14

*Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013) ..............................11

*Commonwealth of Kentucky v. Marathon Petroleum Company, LP*, 2016 WL 7031904 (W.D. Ky. Dec. 1, 2016) ...........................................13

*DLX, Inc. v. Kentucky*, 381 F.3d 511 (6th Cir. 2004) .............................................11

*Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003) ................................12

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007) .................5, 6, 10

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968) .............................9

*Heater Control Panels*, 12-cv-00401 (E.D. Mich.), Apr. 30, 2014 Op. & Order ..................7, 8

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) .................................1, 9, 11, 12, 13

*In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ...................................18

*In re Auto. Parts Antitrust Litig.*, 2016 WL 8201483 (E.D. Mich. Dec. 28, 2016) .................19

*In re Auto. Parts Antitrust Litig.*, 2016 WL 8200511 (E.D. Mich. Aug. 9, 2016) ....................19

*In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) ..................................12

*In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997) ..............12

ii

*In re Brand Name Prescription Drugs Antitrust Litig.,* 1996 WL 267752
  (N.D. Ill. May 17, 1996) ........................................................................9

*In re Cardizem CD Antitrust Litig.,* 332 F.3d 896 (6th Cir. 2003) ...............................6

*In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297 (E.D. Mich. 2001) ....................19

*In re Commercial Tissue Prods.,* 183 F.R.D. 589 (N.D. Fla. 1998) ...........................13

*In re Opana ER Antitrust Litig.,* 2016 WL 738596, at *4 (N.D. Ill. Feb. 25, 2016) ..................9

*In re Packaged Ice Antitrust Litig.,* 2012 WL 5493613 (E.D. Mich. Nov. 13, 2012) ..............13

*In re Plastic Cutlery Antitrust Litig.,* 1998 WL 135703 (E.D. Pa. Mar.20, 1998) ...................13

*In re Potash Antitrust Litig.,* 159 F.R.D. 682 (D. Minn. 1995) ........................................... 13-14

*In re Refrigerant Compressors Antitrust Litig.,* 2016 WL 61386009
  (E.D. Mich. Oct. 21, 2016) ...................................................................13

*In re Sugar Indus. Antitrust Litig.,* 579 F.2d 13 (3d Cir. 1978) ...................................12

*In re Western Liquid Asphalt Cases,* 487 F.2d, 191, 197, 199 (9th Cir. 1973) ........................12

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.,* 628 F.2d 971 (6th Cir. 1980) ...................13

*Kardules v. City of Columbus,* 95 F.3d 1135, 1349-51 (6th Cir. 1996) ....................................11

*Kirschke v. Prelesnik,* 2010 WL 3655649 (E.D. Mich. Sept. 16, 2010) ....................................18

*Laumann v. Nat'l Hockey League,* 907 F. Supp. 2d 465 (S.D.N.Y. 2012) ................................20

*Modern Holdings, LLC v. Corning Inc.,* 2015 WL 1481459 (E.D. Ky. Mar. 31, 2015) ..... 18-19

*Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416 (6th Cir. 2006) ...................................... 6, 10-11

*Musson Theatrical v. FedEx,* 89 F.3d 1244 (6th Cir. 1996) ....................................5, 9

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.,* 783 F.3d 1045
  (6th Cir. 2015) ...................................................................................... 18

*Paper Sys., Inc. v. Nippon Paper Indus. Co.,* 281 F.3d 629 (7th Cir. 2002) ............................. 9

*Perkins v. Standard Oil Co.,* 395 U.S. 642 (1969) ................................................... 12

*Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979) ......................................................... 9

11812882.1

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996) ........................11

*Skidmore v. Access Group, Inc.*, 149 F. Supp. 3d 807 (E.D. Mich. 2015) ...............................11

*Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008) .................................................11

*Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 325 (2d Cir. 2010) ............................8

*White v. United States*, 601 F.3d 545, 552-54 (6th Cir. 2010) ...................................................11

*White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229 (6th Cir. 1994) ...........................14

**OTHER**

I.B Areeda & Hovenkamp, Antitrust Law ¶ 273 ...................................................................5-6

11812882.1

## STATEMENT OF THE ISSUES

1.      Defendants claim that Plaintiffs' purported lack of constitutional standing deprives the Court of subject matter jurisdiction, and thus seek dismissal pursuant to Rule 12(b)(1), rather than Rule 12(b)(6). The Court rejected similar substantive arguments in another *Auto Parts* case under Rule 12(b)(6), and Rule 12(b)(1) does not allow for substantive challenges to Plaintiffs' constitutional standing. Under these circumstances, should the Court deny Defendants' motion?

**Answer:** Yes.

2.      *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), and its progeny provide for an exception to its "direct purchaser rule" where the defendant wholly owns the direct purchaser. Plaintiffs allege having purchased Anti-Vibration Rubber Parts from Defendants' wholly-owned subsidiaries, and Defendants have not shown otherwise. Under these circumstances, do Plaintiffs maintain antitrust standing, such that Defendants' motion to dismiss or for summary judgment should be denied?

**Answer:** Yes.

3.      Sixth Circuit law generally precludes motions to strike class certification. Defendants' motion to strike here is predicated largely on their groundless contentions as to Plaintiffs' standing, as well as contentions regarding issues arising under Rule 23(a) that are contrary to established law and/or unsupported by an adequate factual record. Under these circumstances, should Defendants' motion to strike be denied?

**Answer:** Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) ................................................. 14-15

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007) ..................5, 6, 10

*Heater Control Panels*, 12-cv-00401 (E.D. Mich.), Apr. 30, 2014 Op. & Order  ..................7, 8

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) .................................................1, 9, 11, 12, 13

*In re American Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ...................................................18

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045
 (6th Cir. 2015) ........................................................................................................................ 18

*Perkins v. Standard Oil Co.*, 395 U.S. 642 (1969)  ................................................................. 12

11812882.1

## INTRODUCTION

Direct Purchaser Plaintiffs urge the Court to deny Defendants' motion. This Court has subject matter jurisdiction under the federal antitrust laws, Plaintiffs have standing as direct purchasers, and it is inappropriate to strike class action allegations at this stage of the case.

Defendants' motion is a shape-shifting one: it purports to be a motion to dismiss, a motion for summary judgment, and a motion to strike. However the Court chooses to treat the motion, it should be denied. As explained in detail below, Defendants' motion relies primarily on five declarations that are so vague and at times misleading as to require wide-ranging discovery in this case before the issues can be properly addressed on a complete record. Defendants wield those declarations in the service of arguments that are procedurally improper and contrary to the governing substantive law. In particular:

- What Defendants frame as a Rule 12(b)(1) motion based on the Court's purported lack of subject matter jurisdiction is in substance a restyled Rule 12(b)(6) motion to dismiss for Plaintiffs' purported lack of constitutional standing. But the Sixth Circuit has made clear that Rule 12(b)(1) does not allow for dismissal on that basis. Even if Rule 12(b)(1) allowed for dismissal on that basis, Defendants' factual claims are insufficient to justify dismissal.

- Contrary to Defendants' argument, Plaintiffs have standing as direct purchasers under *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), because they bought directly from one or more of Defendants' wholly-owned subsidiaries. Under governing procedural standards, Defendants' motion should not be treated as a motion for summary judgment, as they urge. Even if the Court were to treat it as a motion for summary judgment, Defendants' declarations are woefully deficient and the motion should be denied.

- Defendants' motion to strike Plaintiffs' class allegations is likewise procedurally improper

at this stage. It relies on a legal contention that is wrong, as well as factual claims that are unsupported by the sparse record Defendants have attempted to create.

For all of these reasons, Defendants' motion should be denied.

## FACTUAL BACKGROUND

During a period of at least ten years, Defendants and their co-conspirators conspired to rig bids and otherwise fix the prices of Anti-Vibration Rubber Parts ("AVRPs") sold in the United States and elsewhere. Compl. ¶ 1.[1] Plaintiffs each purchased AVRPs directly from an entity of which one of the Defendants is the ultimate parent, and paid higher prices than they would have absent the conspiracy. *Id.* ¶¶ 11-13, 85. Plaintiffs' proposed class is defined as follows:

> All direct purchasers of Anti-Vibration Rubber Parts (excluding Defendants and their past and present parents, subsidiaries, affiliates and joint-ventures) in the United States from any of the Defendants (or their controlled subsidiaries, affiliates, joint-ventures, or entities of which they are the ultimate parent) during the Class Period.

Compl. ¶ 76. Defendants are either the parent company or an American subsidiary in one of four corporate families. Compl. ¶¶ 14-23. Defendant Bridgestone Corporation ("BSJ"), a Japanese corporation, is the ultimate parent company of its Bridgestone Retail Operations business unit, which, according to a Bridgestone website, "operates the largest network of company-owned automotive service providers in the world—nearly 2,200 tire and vehicle service centers across the United States—including Firestone Complete Auto Care, Tires Plus, and Wheelworks store locations." *See* Ex. A - Decl. of Bart D. Cohen ("Cohen Decl."), Ex. 1. *See also* Defs.' Mem. at 16 ("Bridgestone Corporation is the indirect owner, through several levels of corporate ownership, of certain Firestone repair shops that sell auto parts to individual consumers.").

---

[1] AVRPs are "are installed in suspension systems and engine mounts, as well as other parts of an automobile, to reduce engine and road vibration." Compl. ¶ 4.

Over the course of 18 months beginning in November of 2012, three of the parent companies referenced above – BSJ, Yamashita Rubber Co., Ltd. and Toyo Tire & Rubber Co., Ltd. – and certain of their executives pleaded guilty to United States Department of Justice ("DOJ") charges for their roles in the AVRP conspiracy. Compl. ¶¶ 66-74. BSJ paid a $425 million fine, the second largest fine to date resulting from the DOJ Antitrust Division criminal investigation of the automotive parts industry. Compl. ¶ 71.

Defendants' declarations are directed largely at obfuscating the undisputed corporate relationships that confer both constitutional and antitrust standing on Plaintiffs. However, it is indisputable that Defendant BSJ and/or one or more of its wholly-owned subsidiaries manufactures AVRPs. As depicted in part in Figure 1 below, Defendants acknowledge the following: (1) BSJ and/or its wholly-owned subsidiaries manufacture AVRPs; (2) Bridgestone Americas, Inc., is a wholly-owned subsidiary of BSJ; (3) Bridgestone Retail Operations, LLC ("BSRO/Firestone"), is a wholly-owned subsidiary of Bridgestone Americas, Inc.; and (4) BSRO/Firestone sells AVRPs directly to retail consumers.



**Figure 1**

3

Defendants further obscure the facts underlying Plaintiffs' standing by implying—but not expressly saying—that BSRO/Firestone purchases AVRPs that were previously sold to entities outside the Bridgestone corporate family. While it would be strange indeed if the Bridgestone companies sold products to others, only to buy them back at a higher price to sell them again, the Court need not speculate whether that occurred. Any such allegations are outside the scope of the Complaint and are not properly before the Court on a motion to dismiss. Even if the Court were to treat this as a motion for summary judgment, Defendants have failed to establish any such facts.

**ARGUMENT**

A. **This Case is an Ordinary Direct Purchaser Class Action Under Section 1 of the Sherman Act; the Court has Subject Matter Jurisdiction.**

Like all the other Direct Purchaser Plaintiff cases in MDL 2311, this is a case under Section 1 of the Sherman Act over which the Court has federal subject matter jurisdiction. Plaintiffs allege that Defendants engaged in a price-fixing conspiracy, to which some of them have pled guilty. Plaintiffs allege that they bought AVRPs directly from a wholly-owned subsidiary of Defendants. Time and again, the Court has held such allegations to be sufficient in this MDL. The moving AVRP Defendants ask the Court to make an exception for them for reasons contrary to the Court's precedent and Sixth Circuit law.

Though Defendants acknowledge that BSJ's manufacturing arm manufactures AVRPs and that BSJ's retail arm sells AVRPs to retail consumers, they argue that "the Court cannot assume Plaintiffs' AVRPs were made by Defendants simply because Plaintiffs may have bought them in a Firestone store." Defs.' Mem. at 6-7. Relying in part on declarations from their officers to the effect that Defendants *generally* do not sell AVRPs directly to "retail stores, repair shops, or individual consumers" (emphasis added), Defendants claim that Plaintiffs' injuries are "based on

4

a 'speculative chain of possibilities,'" and argue that the Complaint must therefore be dismissed for lack of constitutional standing. *Id.* at 5. Because Defendants' premise relies on cases that are not relevant here, their Rule 12(b)(1) motion should be denied.

A Rule 12(b)(1) motion may attack the court's subject matter jurisdiction either facially or factually. Facial challenges address only the legal sufficiency of the allegations in the complaint. In that context, all reasonable inferences are drawn in plaintiffs' favor, just as in the case of a Rule 12(b)(6) motion. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A claim cannot be dismissed upon a facial attack if there is "any arguable basis in law for the claim made." *Musson Theatrical v. FedEx*, 89 F.3d 1244, 1248-49 (6th Cir. 1996) (Rule 12(b)(1) dismissal erroneous where plaintiff asserted a claim that had never previously been recognized but was supported by "reasoned arguments why a cause of action should exist").

Rule 12(b)(1) factual challenges, on the other hand, invite the court to "weigh conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek*, 491 F.3d at 330. But such factual attacks are reserved only for those cases where "the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Id.* If the factual attack on "subject-matter jurisdiction also implicates an element of the cause of action, then the district court should *find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (emphasis in original; quotation marks omitted). *See also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (where "the jurisdictional and substantive inquiries are not wholly independent," "to the extent that the district court did render a factual finding, any such finding was improper.") (quoting I.B Areeda & Hovenkamp, *Antitrust Law* ¶ 273, at 326). Defendants' motion here relies on the premise that Plaintiffs have not adequately alleged injury-in-fact, an element of any antitrust claim. *See, e.g., Bassett v. Nat'l*

*Collegiate Athletic Ass'n*, 528 F.3d 426, 434 (6th Cir. 2008) (citing *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 909 (6th Cir. 2003)). Accordingly, the Court should deny the motion.

A failure or inability to allege facts necessary to support a claim, or elements of the claim, in response to a factual attack, does not defeat the court's subject matter jurisdiction to adjudicate that claim. *Gentek*, 491 F.3d at 330. Courts may dismiss federal claims based on factual challenges to subject matter jurisdiction only where "the plaintiff's claims are clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous ...." *Gentek*, 491 F.3d at 332 (citation omitted); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) ("jurisdictional dismissal is proper if the federal claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous'") (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1945)).

Whether asserted as a facial or a factual attack, Defendants' Rule 12(b)(1) jurisdictional challenge is baseless. Plaintiffs allege federal-question subject-matter jurisdiction over a single count, a federal antitrust claim based on having paid artificially inflated prices directly to Defendants or one of their corporate affiliates for AVRPs in the United States within the relevant time period, all as a result of Defendants' conspiracy. In short, this is a garden-variety federal direct-purchaser Section 1 antitrust action over which this Court has subject matter jurisdiction.

1. **Defendants' Rule 12(b)(1) Motion is Nothing More Than a Repackaged Facial Challenge to Purchaser Status that this Court has Already Rejected in Other Cases.**

This Court has already rejected, in other *Auto Parts* cases, similar challenges to the facial sufficiency of plaintiffs' allegations. For example, the defendants in the *Heater Control Panels* Direct Purchaser Actions challenged as inadequate plaintiffs' allegation that each named plaintiff purchased HCPs from "one or more Defendants and/or their co-conspirators." *Cf.* Defs.' Mem., at

6

3 ("Plaintiffs fail to identify the entities that sold them these AVRPs"). The Court held that the plaintiffs' averment was sufficient, and observed that plaintiffs were not obligated to allege facts concerning "whether DPPs purchased HCPs for new vehicles or repair parts, what prices were paid, or from whom the purchases were made." *Heater Control Panels*, 12-cv-00401 (E.D. Mich.), Apr. 30, 2014 Op. & Order (ECF 78), at 10. In addressing defendants' related challenge to antitrust standing, a challenge "more onerous than the conventional Article III inquiry," *id.* at 15, the Court held that plaintiffs' allegation that each "purchased HCPs directly from one or more of the Defendants . . . and that Defendants' conspiracy impacted the prices DPPs paid for HCPs" was enough to satisfy their burden. *Id.* at 16. *Cf.* Compl. ¶¶ 11-13, 85 (Plaintiffs each purchased AVRPs directly from an entity of which one of the Defendants is the ultimate parent, and paid higher prices than they would have absent the conspiracy). Though repackaged as a subject matter jurisdiction challenge, Defendants' present motion raises the same arguments the Court properly rejected in *Heater Control Panels*.

## 2. Defendants' Facial Attack Otherwise Lacks Merit.

Defendants argue that "Plaintiffs do not even allege they purchased parts made by Defendants, making any injury entirely speculative," and that such speculation necessarily defeats Plaintiffs' standing and deprives this Court of its subject matter jurisdiction over DPPs' antitrust action. Defs.' Mem. at 6. But like the HCP plaintiffs, Plaintiffs here have adequately alleged that each of them purchased AVRPs directly from "an entity of which one of the Defendants is the ultimate parent." Plaintiffs are not required to allege at this stage details as to the AVRPs, their manufacturers, or their journey through Bridgestone's touted vertically-integrated operations from

Indonesian rubber plantations to thousands of retail stores in America.[2] *See* Apr. 30, 2014 Op. & Order (ECF 78), *Heater Control Panels*, 12-cv-00401, at 10 (citing *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 325 (2d Cir. 2010)).

This is especially so where the AVRPs "manufactured, distributed or sold by Defendants during the Class Period are not functionally distinguishable from each other in any material respect." Compl. ¶ 30. Indeed, Defendants concede that "it is not possible to know what entity made a particular AVRP," and that the "only way to find out which manufacturer made a given [AVRP] would be to trace it throughout the various entities in the manufacturing chain"—a task that requires information exclusively within Defendants' control. Defs.' Mem. at 6; *see also id.* Ex. E. (Schuster Decl.) ¶ 8. Accordingly, Plaintiffs' allegations that they purchased commodity

---

[2] These details are also almost entirely within Defendants' exclusive control and can only come to light via discovery.  Having said that, Bridgestone has boasted of its extraordinary vertical integration in the tire and rubber industry.  It strains credulity for Defendants to suggest that Bridgestone does not primarily sell its own AVRPs at the retail level, as Bridgestone's website includes the following:  "Vertically, the Group's operations extend throughout the supply chain, from upstream, where raw materials are produced in house, to downstream retail networks." Ex. A - Cohen Decl., Ex. 2 (Bridgestone Corporation, Business Report for the 93rd Fiscal Period, at 11); "Bridgestone will emphasize uniformity in all resources held within Bridgestone and strengthen and effectively utilize 'vertical integration'." Ex. A - Cohen Decl., Ex. 3 (Mid-term Management Plan 2007); "The Bridgestone group is one of the most vertically integrated companies in the tire industry, internally producing many of the raw and intermediate materials used in the development and manufacturing of its strategic tire products." Ex. A - Cohen Decl., Ex. 4. Bridgestone's vertical integration runs the gamut from operating its own rubber plantations in Indonesia to thousands of retail stores selling rubber products in the United States. *See* Ex. A - Cohen Decl., Ex. 5 (referencing "Bridgestone's rubber plantations in Indonesia"). Bridgestone has further claimed that "[t]he Bridgestone Group is characterized by not only the horizontal expansion of its global operations, but also the vertical expansion of the supply chain that extends from the natural rubber farms that lie upstream to the sales channel network downstream. Vertical expansion confers one of the Group's most important competitive advantages….." Ex. A - Cohen Decl., Ex. 6, at 3 (Bridgestone CSR Report, 2012). Shoshi Arakawa, Chairman of the Board, CEO and President of Bridgestone has said that "[i]n my view, vertical integration remains one of our greatest operational strengths. … Our upstream operations are unrivaled within the industry. Our downstream tire sales network, which combines dealer operations together with company-owned facilities, is also one of the largest in the world." Ex. A - Cohen Decl., Ex. 7, at 6.

11812882.1

AVRPs during the Class Period directly from an entity within Defendants' vertically-integrated corporate families, at a supracompetitive price, as a result of Defendants' conspiracy, is more than sufficient to withstand a facial challenge. *See Musson Theatrical*, 89 F.3d at 1248-49 (holding non-novel causes of action not subject to facial challenge under Rule 12(b)(1)). *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979) (individual consumers maintain standing despite purchasing price-fixing defendants' manufactured goods only at retail level); *In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *4 (N.D. Ill. Feb. 25, 2016) (citing *Reiter*).[3]

### 3. Defendants' Factual Attack on the Court's Subject Matter Jurisdiction is Meritless and Improper.

In addition to various other deficiencies, Defendants' declarations do not foreclose DPPs' direct purchase allegations.[4] Mr. Schuster's declaration, for example, acknowledges that BSJ's retail arm occasionally installs AVRPs into retail customer vehicles. Schuster Decl. ¶ 6. While Mr. Schuster states that BSJ's retail arm does not purchase AVRPs from any "Defendant" in this action, he does not make any express representations concerning purchases from any of Defendants' other corporate affiliates.

---

[3] In this regard, a Plaintiff's direct purchase of AVRPs from one Defendant's subsidiary at a supra-competitive price that ultimately proves to have been manufactured by a different co-conspirator is also actionable. *See, e.g., Paper Sys., Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 631 (7th Cir. 2002) (Easterbrook, J.) ("*Hanover Shoe*[*, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968),] and *Illinois Brick* allocate to the first non-conspirator in the distribution chain the right to collect 100% of the damages."); "*In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 267752, at *3 (N.D. Ill. May 17, 1996) ("Given the potential for liability as co-conspirators, even as to those select manufacturers who conducted transactions exclusively through the use of wholesalers, Sherman Act claims would remain.").

[4] All the declarants are executive employees of domestic Defendants or related non-Defendant entities. Their assertions of fact as to what the non-U.S. Defendants did or did not do are without foundation and therefore are not competent evidence. *See, e.g.*, Bagheri Decl. ¶ 10 (only ever worked for U.S.-based YUSA but states that in addition to YUSA "[n]o other Yamashita entity owns or operates any retail stores, repair shops, or other entities that sell [AVRP] directly to individual consumers in the U.S.").

More fundamentally, he also acknowledges that BSJs' retail arm

> does not know what entity manufactured any particular [AVRP] that it purchases and installs in a retail consumer's vehicle because the parts do not identify the manufacturer. The only way to find out which manufacturer made a given [AVRP] would be to trace it through the various entities in the manufacturing chain.

Schuster Decl. ¶ 8. Thus, Mr. Schuster concludes only that it is "highly possible" that BSJ's retail arm installed AVRPs that were not manufactured by a named Defendant into a retail customer's vehicle. Schuster Decl. ¶ 7. Mr. Schuster's declaration therefore does not foreclose DPPs' purchaser status allegations: it remains probable that Plaintiffs' purchases of AVRPs from Bridgestone's retail arm involved AVRPs manufactured and distributed by another Bridgestone entity, or manufactured by other Defendants or their affiliated entities.

In any event, Defendants' factual attack is improper. There is nothing about Plaintiffs' allegations that is so "clearly immaterial or insubstantial" or "wholly unsubstantiated and frivolous" as to warrant pre-discovery dismissal. If Plaintiffs purchased AVRPs that Defendants and their affiliates did not manufacture, that would only raise fact issues as to Plaintiffs' substantive claims; it would have no bearing on whether this Court has subject matter jurisdiction at this stage of the case. *See, e.g., Gentek*, 491 F.3d at 321-32 (rejecting jurisdictional challenge to action removed because it involved a "consumer product" subject to the federal Magnuson-Moss Act where the Court later granted summary judgment because product did not qualify as a "consumer product" within the meaning of the Act); *Moore*, 458 F.3d at 445 (rejecting jurisdictional challenge where plaintiff made a "colorable claim that he was an 'employee,' and

therefore an ERISA 'participant,' at the time of his disability," notwithstanding subsequent determination that "Plaintiff's status was not actually that of an employee").[5]

> **B.     Plaintiffs are "Direct Purchasers," as Defined by *Illinois Brick* and Its Progeny.**

Plaintiffs are direct purchasers because they purchased directly from one of Defendants' wholly-owned subsidiaries.  Defendants' short argument that Plaintiffs' claims are precluded by the direct purchaser rule established by *Illinois Brick* is based entirely on a premise that is contrary to *Illinois Brick* itself, as well as a plethora of more recent decisions interpreting that case. Defendants err in assuming that Plaintiffs rely solely on the premise that "the entities from which they purchased their AVRPs were ultimately *'controlled'* by the named Defendants." Defs.' Mem. at 8 (emphasis added).  In fact, Plaintiffs rely primarily on Defendants' *ownership* of their

---

[5] None of the cases Defendants cite in this context involved an attack on named plaintiffs' direct purchaser status in a federal antitrust action.  The cases are otherwise plainly inapt. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 919 (6th Cir. 2008) (sanctioning plaintiff for repeated "utterly frivolous" filings that had "no support whatsoever" for his argument that his Medicare claims could be asserted as *qui tam* actions); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1142 (6th Cir. 1996) (affirming dismissal of contract-related antitrust suit as preempted by the Contract Disputes Act); *Skidmore v. Access Group, Inc.*, 149 F. Supp. 3d 807, 814 (E.D. Mich. 2015) (dismissing, on sovereign immunity grounds, suit against Kentucky state agencies); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 528 (6th Cir. 2004) (affirming dismissal, on sovereign immunity grounds, of federal takings action against Kentucky state agencies). Similarly, all of Defendants' constitutional standing cases involved constitutional attacks on state action, speculative future conduct, and/or are otherwise inapt. *See Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1148-50 (2013) (U.S. resident plaintiffs lacked standing to challenge constitutionality of the provisions of statute that authorized certain eavesdropping where, *inter alia*, plaintiffs' "speculative chain of possibilities [did] not establish that injury based on potential future surveillance is certainly impending or is fairly traceable" when government had other eavesdropping mechanisms available that could instead be used to the same effect); *White v. United States*, 601 F.3d 545, 552-54 (6th Cir. 2010) (chicken-breeding plaintiffs lacked standing to challenge the constitutionality of statute where, *inter alia*, all 50 states already outlawed the same conduct addressed by the statute); *Kardules v. City of Columbus*, 95 F.3d 1135, 1349-51 (6th Cir. 1996) (vacating decision below and directing dismissal of vote dilution action for "fail[ing] to make out a justiciable case for want of standing" because, *inter alia*, "many factors potentially entered into each individual voter's decision whether to support or oppose [the Township and Village] merger").

subsidiaries. In almost every instance in which the word "controlled" appears in the Complaint, it is in reference to Defendants' "*wholly owned and/or* controlled" subsidiaries." Compl. ¶¶ 14-15, 17-23 (emphasis added).

That is because in *Illinois Brick* itself, the Court cited as potential exceptions to its general rule any "situation in which *market forces have been superseded* [such as] where the direct purchaser is *owned or controlled* by its customer." *Illinois Brick*, 431 U.S. at 736 n.16 (emphasis added) (citing *Perkins v. Standard Oil Co.*, 395 U. S. 642, 648 (1969) ("*Perkins*"); *In re Western Liquid Asphalt Cases*, 487 F.2d, 191, 197, 199 (9th Cir. 1973)). Lower courts have since repeatedly recognized ownership, separate and apart from control, as grounds for an exception to *Illinois Brick*, and have applied the ownership exception where defendants (rather than plaintiffs) own a direct purchaser. *See, e.g., In re ATM Fee Antitrust Litig*., 686 F.3d 741, 749 (9th Cir. 2012) (ruling at dismissal stage that "an indirect purchaser may sue if the direct purchaser is a division or subsidiary of the price-fixing seller"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997) (recognizing "ownership" and "control" as separate exceptions).

The exception is premised primarily on the fact that where, as in this case, an antitrust violator and its middlemen are commonly owned, the court may assume that "market forces have been superseded" as to transactions within the corporate family. An additional premise is a more practical one: "To adopt any other view would invite evasion [of the antitrust laws] by the simple expedient of inserting a subsidiary between the violator and the first noncontrolled purchaser." *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 19 (3d Cir. 1978). *See also Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1146 (9th Cir. 2003) ("Were we to grant immunity from section 1 merely because defendants nominally sell services through another entity rather than to consumers directly, we would risk opening a major loophole for [antitrust violations].").

In *Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980), the Sixth Circuit cited the *Illinois Brick* Court's reliance on *Perkins*, observing only that "[i]n *Perkins*, the Court held the defendant could not avoid liability under the Robinson-Patman Act for price discrimination merely by channeling the illegal discount through its 60 percent-owned subsidiary." The clear inference to be drawn is that a defendant's majority-ownership of subsidiaries in its relevant chain of distribution is by itself sufficient to dictate that an exception to *Illinois Brick* applies. *See also Commonwealth of Kentucky v. Marathon Petroleum Company, LP*, 2016 WL 7031904, at *3 (W.D. Ky. Dec. 1, 2016) (citing *Jewish Hospital*'s reliance on the fact that "[i]n *Perkins*, the defendant was a sixty percent owned subsidiary").[6]

The wide-ranging recognition of defendants' ownership of its subsidiaries in the chain of distribution as grounds to invoke an exception to *Illinois Brick* is reflected in the frequent certification of classes—like Plaintiffs' proposed class here—comprised of direct purchasers from defendants *and* their subsidiaries. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *10 (E.D. Mich. Nov. 13, 2012) (certifying class of "[a]ll purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates); *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 590 (N.D. Fla. 1998) (certifying class of "all Persons ... who purchased Commercial Tissue Products directly from defendants, or their respective parents subsidiaries or affiliates"); *In re Plastic Cutlery Antitrust Litig.*, 1998 WL 135703, at *9 (E.D. Pa. Mar.20, 1998) (certifying class of "[a]ll purchasers…of plastic cutlery directly from the defendants or their respective wholly-owned subsidiaries or

---

[6] *In re Refrigerant Compressors Antitrust Litig.*, 2016 WL 6138600, at *9 (E.D. Mich. Oct. 21, 2016), which Defendants cite in this context, has no bearing here. The plaintiff in that case sought to invoke the exception based on its own insignificant ownership and control of the actual direct purchaser.

13

affiliates"); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 688 (D. Minn. 1995) (certifying class of "all purchasers…of potash directly from defendants or any subsidiary or affiliate thereof"). That by itself belies Defendants' contention that Plaintiffs' claim to standing in this case is anything other than ordinary.[7]

### C. Defendants' Request for Summary Judgment is Both Procedurally and Substantively Deficient.

Unable to rely strictly on the deficiencies they allege on the face of the Complaint, Defendants invoke Rule 12(d) and ask the Court to treat their motion as one for summary judgment. That ploy is rarely appropriate in any case in this Circuit, and is particularly inappropriate in this case, where the relevant record consists only of Defendants' sparse and misleading declarations.

That is in large part because Rule 12(d) itself provides that "[a]ll parties must be given a reasonable opportunity to present *all* the material that is pertinent to the motion." (emphasis added). The Sixth Circuit cited Supreme Court precedent in expounding on that idea in *Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004):

> It is well-established that the plaintiff must receive "a full opportunity to conduct discovery" to be able to successfully defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th

---

[7] Defendants' repeated objections to the fact that Plaintiffs and the proposed class differ in certain respects from direct purchasers in other *Automotive Parts* cases are irrelevant. *See* Defs.' Mem. at 2, 4, 8. The difference is simple: Defendants, or at least BSJ's subsidiaries, sell AVRPs—unlike other price-fixed automotive parts—directly to individual consumers. Moreover, Defendants' suggestion that Plaintiffs belong in the End Payor Plaintiffs' class is wrong.  Plaintiffs here do not make a claim based on buying a car containing a price-fixed part as do the End Payors.  Plaintiffs here bought the part itself directly from a subsidiary of a Defendant.

Cir. 1994) ("[in light of *Anderson* and *Celotex*,] a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery").

*Ball*, 385 F.3d at 719-20.

Defendants simply ignore Plaintiffs' right to discovery. The few sentences in Defendants' declarations that touch on what discovery might reveal as to Defendants' dealings with AVRP retailers are most notable for what they do *not* say. For example, declarant Yoichi Ohira, President and CEO of defendant Bridgestone APM Company ("BAPM"), represents that "BAPM and BSJ manufacture Anti-Vibration Rubber Parts and sell those parts to certain OEMs (e.g., Toyota) and their suppliers (e.g., Tier 1 suppliers)." But that sentence does not say that BAPM and BSJ sell AVRPs *only* to those customers. Defs.' Mem., Ex A. ¶ 5. *Cf. id.*, Ex. C. ¶ 7 (Saki Decl.) ("To the extent that Anti-Vibration Rubber Parts are sold by Toyo for repair or replacement, they are sold *exclusively* to the OEMs and their Tier 1 suppliers located in North America.") (emphasis added).[8]

Paragraph 8 of the Ohira Declaration identifies Bridgestone Retail Operations, LLC d/b/a Firestone Complete Auto Care ("BSRO/Firestone") as an "entit[y] that *may* sell Anti-Vibration Rubber parts to retail consumers" (emphasis added)—implying that Mr. Ohira does not know whether BSRO/Firestone in fact sells AVRPs to retail consumers. This is curious indeed.  In fact, Bridgestone's own Firestone and Tires Plus websites admit and advertise that its retail stores sell AVRPs.  *See, e.g.,* Ex. A - Cohen Decl., Ex. 8:

> Car bushings are small rubber or polyurethane suspension components that are used to isolate vibration, provide cushioning, and reduce friction between metal parts on your vehicle. The most common car bushings are control arm bushings (also known as A-arm bushings or wishbone bushings) and sway bar bushings, but you will also find bushings positioned between your vehicle's suspension and frame in several other areas. . . . Firestone Complete Auto Care always includes bushing inspection as part of

---

[8] The Saki Declaration thus raises the question of where Toyo sells AVRPs that are *not* "for repair or replacement," whatever that means.

> our Steering and Suspension Services as well as our Alignment services.
>
> \*        \*        \*
>
> For more information about bushing diagnostics, the importance of bushings, or suspension system maintenance contact a Firestone Complete Auto Care tire and auto service professional online, by telephone, or by stopping into one of our 1700-plus Firestone Complete Auto Care stores.

*See also* Ex. A - Cohen Decl., Ex. 9 (BSJ subsidiary Tires Plus sells bushings, a type of AVRP).

Paragraph 11 of the Ohira declaration reflects that BSRO/Firestone is a wholly-owned subsidiary of Bridgestone Americas, Inc. ("BSAM"), which is a wholly-owned subsidiary of Defendant BSJ. Mr. Ohira adds that "BSJ does not *directly* own, operate, or control BSRO/Firestone or any other retail stores, repair shops, or other entities that may sell Anti-Vibration Rubber Parts to retail consumers." (emphasis added). *Id. Cf.* Defs.' Mem., Ex. A, ¶ 10 ("BAPM does not own, operate, or control any retail stores, repair shops, or other entities that may sell Anti-Vibration Rubber Parts to retail consumers.") (excluding "directly"). Those disclosures collectively reflect that BSJ does in fact own, operate, or control BSRO/Firestone or any other retail stores, repair shops, or other entities that may sell Anti-Vibration Rubber Parts to retail consumers—but only in some way other than what Bridgestone itself defines as "directly." Finally, paragraphs 8 and 9 of the Ohira Declaration reflect that BSJ and BAPM have never sold AVRPs to any entities that sell to retail consumers. But the declaration includes no such representation as to BSAM—the wholly-owned subsidiary of Defendant BSJ, which is itself the 100-percent owner of retailer BSRO/Firestone.

The Schuster declaration is no more enlightening. Mr. Schuster declares that "Firestone stores do not sell Anti-Vibration Rubber Parts to retail consumers over-the-counter." *Id. ¶* 6. But that declaration does not define either "over-the-counter" or "Firestone stores." *See also supra*, at

2 (Bridgestone website reflects its ownership of "nearly 2,200 tire and vehicle service centers across the United States—including Firestone Complete Auto Care, Tires Plus, and Wheelworks store locations"). For example, Mr. Schuster does not deny that Bridgestone's Firestone, Tires Plus or Wheelworks stores sell AVRPs directly to consumers and *install* them in their vehicles.  In any event, the Schuster Declaration cannot mean that BSRO/Firestone—which is ultimately wholly owned by Defendant BSJ—does not sell AVRPs to retail consumers, because Mr. Ohira declared that BSRO/Firestone "may" in fact do so, and Bridgestone's subsidiaries' Firestone and Tires Plus's websites admit and advertise that they do. *See supra*. Finally, Mr. Schuster adds that "Firestone stores do not purchase Anti-Vibration Rubber Parts from Bridgestone APM Company (BAPM), BSJ, or any other defendant in this action." Defs.' Mem., Ex. E. ¶ 6. But that does not account for the possibility that BSAM purchases AVRPs from Defendants BAPM and BSJ, and resells them to "Firestone stores"—whatever those are.

In short, nothing in Defendants' extensive verbal sleight-of-hand supports their suggestion that BSJ would allow any of its retail outlets to pay outsiders for Bridgestone AVRPs—or any other product Bridgestone makes—rather than purchasing them directly from other Bridgestone entities. In fact, that suggestion defies credulity.  Is the Court to believe that Bridgestone, which touts its vertical integration, does not sell as retail replacement parts the same AVRPs that Bridgestone sells to automakers when it would be so profitable for the company that makes the products in-house?  BSJ does not deny it, and the Court should not assume it.  Plaintiffs' allegations are sufficient to survive a motion to dismiss.

For all of these reasons, if the Court is nevertheless inclined to grant Defendants' request to treat their motion as one for summary judgment, Plaintiffs would require substantial written and testimonial discovery before the motion could be properly resolved. That discovery is detailed in

11812882.1

the Ex. B - Declaration of Gregory P. Hansel Pursuant to Federal of Civil Procedure 56(d), which accompanies this Brief. It would include whatever discovery is necessary to definitively disclose Defendants' corporate structures, the purchasing practices of all of Defendants' retail outlets, and the chains of distribution by which all of those retail outlets are supplied with AVRPs.[9]

### D.   Defendants' Motion to Strike Plaintiffs' Class Allegations is Improper Procedurally and Contrary to Rule 23 Standards.

Defendants rely in part on Rule 12(f) as grounds for their motion to strike Plaintiffs' class allegations. That rule provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants do not indicate which of those four adjectives purportedly describe Plaintiffs' class allegations. *See Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012) (denying motion to strike class allegations in part for that reason). Defendants' motion is otherwise devoid of support as well.

The Sixth Circuit has held that "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). They "should be resorted to only when required for the purposes of justice and when the pleading to be stricken has *no possible relation to the controversy*." *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002) (emphasis added) (citation omitted). *See also Kirschke v. Prelesnik*, 2010 WL 3655649, at *2 (E.D. Mich. Sept. 16, 2010) (Battani, J.). Rule 23(d)(1)(D), upon which Defendants further rely, is no more availing at this early stage: "The court should defer decision on certification pending discovery if the existing

---

[9] If the Court determines that Plaintiffs must prove that Defendants controlled (rather than merely owned) their retail subsidiaries, Plaintiffs will require yet more discovery to resolve the issues Defendants raise.

record is inadequate for resolving the relevant issues." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996). *See also Modern Holdings, LLC v. Corning Inc*., 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (at the pleading stage, "[t]he moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery].").

Defendants' motion would be deficient by any standard that prevails in any federal court. Defendants contend that Plaintiffs are atypical of the class largely on the same grounds on which they contend Plaintiffs are not direct purchasers—all of which are baseless. *See supra* §§ B, C. To that they add only the claim that Plaintiffs did not purchase AVRPs in the same volume or via the same processes as certain other purchasers. But it is black-letter law that "[c]ourts considering [the typicality] prerequisite [to class certification] have observed that 'claims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typicality requirement, even if members purchase different quantities and pay different prices.'" *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304 (E.D. Mich. 2001) (citations omitted).[10] Defendants do not suggest otherwise.

Finally, Defendants allege that the certainty of conflicts within the class renders Plaintiffs and/or Plaintiffs' counsel inadequate, based solely on the premise that there may be more than one direct purchaser of any AVRP. That in turn depends on the speculative premise that Plaintiffs purchased AVRPs that Defendants manufactured, sold outside their corporate families, and then repurchased before selling them to Plaintiffs. In the same context, the Schuster Declaration is

---

[10] *See also In re Auto. Parts Antitrust Litig.*, 2016 WL 8201483, at *7 (E.D. Mich. Dec. 28, 2016) ("If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members.") (citation omitted); *In re Auto. Parts Antitrust Litig.*, 2016 WL 8200511, at *11 (E.D. Mich. Aug. 9, 2016) ("A proposed class representative can satisfy this prerequisite if his or her claim [arises] 'from the same event or practice or course of conduct that gives rise to the claims of other class members.'") (quoting *Beattie v. Century Tel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).

11812882.1

contrary to Bridgestone's website, and is otherwise vague and incomplete as to Bridgestone's retail operations. *See supra.* Defendants other declarations are silent or inconclusive as to the other Defendants' retail operations.

There is no reason for the Court to grant Defendants' motion to strike on such a sparse and contradictory record. This issue, like all other issues bearing on class certification, should be the subject of the same wide-ranging discovery and class certification motion practice that the parties have undertaken in the other *Automotive Parts* cases that have progressed past the pleading stage. *See also Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 483 (S.D.N.Y. 2012) ("Where all middlemen are alleged to be co-conspirators, the problems of apportioning recovery among all potential plaintiffs and duplicative recovery simply do not arise, and the principle of permitting the purchasers who have been most directly injured is honored.").

## CONCLUSION

For all of the aforementioned reasons, Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) and Defendants' Motion to Strike Class Allegations Under Rule 12(f) and 23(d)(1)(D) should be denied.[11]

---

[11] BSJ, the other foreign defendants, and their counsel have thus far refused to either waive or accept service of the complaint in this case, despite having accepted service and appeared generally in both the End Payor and Auto Dealer actions involving AVRP. Plaintiffs delivered the complaint to both foreign defendants and their counsel, with requests to waive service pursuant to Fed. R. Civ. P. 4(d)(1), which they have not returned. Plaintiffs anticipate raising this issue at the status conference scheduled for June 7 if it is not resolved by then. If Defendants raise this issue in replying to this brief, Plaintiffs would respectfully request that: (1) the Court defer ruling on Defendants' pending motion until that issue is resolved; and (2) the Court preclude the foreign defendants from revisiting the issues raised by Defendants' pending motion.

11812882.1

Dated: May 19, 2017                   Respectfully submitted,

                                      By: /s/ David H. Fink
                                      David H. Fink (P28235)
                                      Darryl Bressack (P67820)
                                      Nathan J. Fink (P75185)
                                      FINK + ASSOCIATES LAW
                                      38500 Woodward Avenue; Suite 350
                                      Bloomfield Hills, MI 48304
                                      Telephone: (248) 971-2500
                                      dfink@finkandassociateslaw.com
                                      dbressack@finkandassociateslaw.com
                                      nfink@finkandassociateslaw.com

                                      Interim Liaison Counsel for Plaintiffs Jerry A.
                                      Anderson, Sr., Laura L. LaRue, Christopher A.
                                      Lee and the Proposed Class


                                      Gregory P. Hansel
                                      Randall B. Weill
                                      Jonathan G. Mermin
                                      Michael S. Smith
                                      PRETI, FLAHERTY, BELIVEAU
                                       & PACHIOS LLP
                                      One City Center
                                      P.O. Box 9546
                                      Portland, ME 04112-9546
                                      Telephone: (207) 791-3000
                                      ghansel@preti.com
                                      rweill@preti.com
                                      jmermin@preti.com
                                      msmith@preti.com


                                      Joseph C. Kohn
                                      William E. Hoese
                                      Douglas A. Abrahams
                                      KOHN, SWIFT & GRAF, P.C.
                                      One South Broad Street, Suite 2100
                                      Philadelphia, PA 19107
                                      Telephone: (215) 238-1700
                                      jkohn@kohnswift.com
                                      whoese@kohnswift.com
                                      dabrahams@kohnswift.com

11812882.1

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
wlondon@fklmlaw.com
mmoskovitz@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN KODROFF
 & WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

Interim Lead Counsel for Plaintiffs Jerry A.
Anderson, Sr., Laura L. LaRue, Christopher A.
Lee and the Proposed Class

Linda P. Nussbaum
Bart D. Cohen
Bradley J. Demuth
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
(917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
bdemuth@nussbaumpc.com

Counsel for Plaintiffs Jerry A. Anderson, Sr.,
Laura L. LaRue, Christopher A. Lee and the
Proposed Class On the Brief

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2017, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system, which will send notification of such filing to all counsel

of record registered for electronic filing.

<div style="margin-left:50%">

/s/ Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500

</div>

11812882.1